And we'll turn to Rousseau against the United States. Go ahead, Ms. Resnick. Good morning. May it please the court. My name is Ellen Resnick. I have the privilege of representing Anthony Rousseau on this appeal in his efforts to vindicate his claim of actual innocence. The key to the murder conviction was Mazza's testimony that a few days after the murder, Anthony Rousseau accepted congratulations. That evidence allowed the jury to infer that Anthony Rousseau must have participated in the murder in some way. If he accepted congratulations, he must have done something. But we now have affirmative proof of how that murder was carried out and who ordered it. The proof does not contradict any of the trial evidence. And it excludes Anthony Rousseau from playing any part in the murder. What is now clear from Spirocco and Calabro, who were both key participants in the Minerva murder, is that Anthony Rousseau did not order it. He did not direct it. He did not participate it in any way. This evidence is so important because it breaks the inference that by accepting congratulations at Wolf's Deli, that Anthony Rousseau was guilty of the murder. There's also testimony about meetings before the murder about Mr. Rousseau's participation in meetings about going to war with the Arena faction. It's not specific, of course, to this particular murder. But it is evidence that he was involved in the declaration of war, or at least in the agreement of the Rousseau crew to participate in the war. Is that not the case? Judge Lynch, that absolutely is the case. We're not challenging the murder conspiracy. Anthony Rousseau was found guilty of it. We're not challenging it here. He served 24 years in jail. I'm puzzled by that. If he's a participant in the murder conspiracy, doesn't that in itself make him a participant, an aider and abetter in the murder? No, Judge, I think that's absolutely not the case here. The question here is whether Anthony Rousseau participated in the murder of Minerva. I'm sorry. So you're saying there's a conspiracy to commit lots of murders, but you're not conceding a separate charge that he's guilty of conspiracy to murder Minerva in particular? The evidence, the charges at trial was a war conspiracy. That was count nine. We're not challenging that. We're challenging here whether or not he aided and abetted the Minerva murder. And we now know from the testimony of Spiraco and Calabro, who were key participants, that he had nothing to do with it. We know that they say that. We know that they say that. Well, they were key participants in the murder. And I ask the court now, given the entire record the court has and the juncture at which the court now must rule whether we have the right to be back in the district court, I'd ask the court to specifically look at the newly discovered evidence that was produced in the district court, which goes to that proof. What is newly discovered evidence since the last time that a panel of this court ruled on the application for leave to file a subsequent habeas, the 2013 petition? Well, Judge Lynch, we now know what both of these key witnesses said to the government. Specifically, Dino Calabro told the government that he had no information that Anthony Russo was involved in the murder. We know that from Ms. Geddes' representations to the district court about what Dino Calabro told her. After the panel denied relief, we sought to speak to the prosecutors in the Eastern District about Spiraco's evidence of Anthony Russo's innocence. We had a face-to-face meeting. We asked the government to please investigate. We're absolutely convinced that Anthony Russo is innocent. And we said to the government, you have witnesses who testified at the Gioli trial. Talk to them. In the district court, I submit we found out exactly what Dino Calabro said. And he said he had no information that Anthony Russo was involved in the murder. So procedurally, we are effectively here on your motion for leave, on your construed motion for leave to file a successive habeas application. I would say that's not accurate. I understand what the court is suggesting. We've suggested there are three grounds upon which this court could exercise relief. And I'm honestly suggesting that the easiest ground is to view what happened in the district court as a separate application for successive relief. I think it's compelling that Dino Calabro, who we had no access to, who was the government's witness, who clearly was the principal witness at the Gioli trial, knew all about it. If you read the summation, he was intimately involved in that murder, as was Frank Sparacco. And even he knows, he knows that Anthony Russo had nothing to do with the murder. He knows that that murder was directed by Joe Giarrusso. That was the evidence at the Gioli trial. He knows who participated in that murder. And his evidence is entirely corroborative and consistent of what we submitted to this panel from Frank Sparacco's sworn statement. So it's all suggestive of what actually happened and specifically who ordered it. Because as Judge Capone said. But why is that inconsistent with the government's theory at the trial? I admit that the evidence here strikes me as very thin in the original trial. If it basically boils down to he accepted congratulations for being involved in this. But he could have been involved behind the scenes in talking with Joseph Russo. The fact that he did not specifically tell Calabro to do something, or did not specifically tell Sparacco to do something, is not inconsistent with his approving this decision by his cousin. I would suggest to the court that that's not what the current record actually shows. It's not what he did or didn't say to Frank Sparacco. It's the fact that Frank Sparacco provided evidence which is undisputed that there was a meeting on March 25 to plan this specific murder. And we know from the Gioli trial how the murder unfolded. And it unfolded very quickly. And it is all consistent with a murder plan on the morning of March 25. There's no other evidence of any murder plan. We're not challenging conspiracy proof, but the court should. But again, the conspiracy proof is not only about the war in general. There is also evidence, is there not, that Jojo Russo, at least, was talking about this murder and ways of getting at Minerva before that planning meeting. All of the evidence at the Russo trial of such talk by Jojo Russo ended in February 1992. Any references of the conspiracy proof ended in 1992. There was no plan at that time. And the problem here is that Anthony Russo and Jojo Russo are two separate people. I'm interested in the fact that you have not referred in your presentation so far to the evidence that I take it is part of your application that someone said, it wasn't just that Anthony Russo was not there when this particular planning meeting went down. I thought there was evidence also that Spiraco was told, don't tell Anthony Russo because he doesn't approve of this. That was in Spiraco's application before this court in 2013. That's not new evidence since 2013. No, but the court asked me questions. Yes, I understand. But that was new evidence in 2013. That is not new evidence since 2013. Is that the issue? Oh, no, there is new evidence since 2013. No, no, no, on this point. I would suggest, Your Honor, that there is because we also know from what was produced in the district court that the government has acknowledged, not only that Frank Spiraco said in his affidavit in 2013, but the government now corroborates that Frank Spiraco tried to tell the government during his proffer sessions that Anthony Russo wasn't involved in the murder and wasn't at the planning meeting. We have that from the government in this case. That is brand new. And that is extraordinary for precisely the reasons the court is getting at. Spiraco said in the submission to this court, to a panel of this court in 2013, that he didn't get the chance to tell the government what he knew about Anthony Russo. The record here is clear that the government didn't want to hear what Spiraco had to know about Anthony Russo's innocence. The proffer report makes. I don't want a sentence. May I complete my sentence? No. Thank you very much. You've reserved time. These are codes. We operate by code here. May it please the court. My name is Elizabeth Geddes, and I'm an assistant United States attorney in the Eastern District of New York. The district court's order denying Anthony Russo's motion for habeas should be affirmed, and this court should not grant further review of Russo's conviction, which was entered 23 years ago after a two-month trial. What should the decree of our court be in your view? What's the decision that you want from us? To deny twofold. One, to affirm the district court's order dismissing the motion for relief. And two, to deny Russo's request for the court to exercise its supervisory jurisdiction in allowing Russo to continue to present his essentially second habeas appeal. There was a prior panel of this court, as you all are aware, who denied this very request. And we submit that there is no new evidence that has been presented by Anthony Russo's team. And therefore, that is law of the case and should be entered. Go ahead. Your view would be that this appeal is basically a motion to file a successive habeas petition. Yes, that is. In essence, that is what's going on here. That we can resolve the matter as far as you're concerned on that basis alone. Yes, Judge. That would require us to agree with you that there is no new evidence since 2013. That's correct. In essence, the new evidence that really is asserted by Russo in support of his innocence petition here is Frank Sporacco's information. And that information was absolutely presented to the court in 2013 when the prior panel denied it. So yes, there has been some further development of that. But the crux of the new evidence, and when I say new, I mean new in 2013, not new here in 2017, the crux is that they have a witness who now says in a spectacular fashion that Anthony Russo is innocent of the offense and goes with this theory that Joseph Russo told Frank Sporacco that they had to keep this murder secret from Anthony Russo, and that Anthony Russo wanted to resolve the war through talk, not shooting. And that was before the panel in 2013. Yes, that was all in the affidavit in 2013 from Frank Sporacco. And all of that cannot amount to clear and convincing evidence that no reasonable fact finder would have convicted Anthony Russo when taken in consideration with all the other evidence. And it's important to look at what the evidence is. It is not just Larry Mazza's testimony that Russo accepted congratulations. Larry Mazza went much further than that. He said that there was a meeting shortly after the March 25th murders where Anthony Russo said, quote, they'd been working on getting him. They finally got to him in front of his cafe. They killed him. And when they is referring to himself, Anthony Russo was included within that they. That was Larry Mazza's testimony. So that was not just he accepted congratulations. He described what they had been doing, that they had been targeting him for a while. And finally, they got him a couple of nights earlier. And they killed someone else in the process. He was satisfied with that. In addition, there was ample evidence presented at the trial that Anthony Russo and Joseph Russo, his cousin, were actively involved in the war, casting serious doubt on Frank Sporacco's claim now that Anthony Russo wanted to resolve the war through talking and not through shooting. There was testimony by Sal Michiata, another cooperating witness who was on the other side, the Arena faction. And he testified that two days after the murder of Minerva and Imbergamo, he was in a car. This is March 27, 1992, where Tommy Gioli ended up with his hand was shot through. And at the Gioli trial, there's testimony about that day they were out there looking for Bobo Malpeso or Luis Malpeso. Sal Michiata testified in Anthony Russo's trial in 1994 that during that attempt, he saw Anthony Russo in a car along with three other individuals. That's two days after the Minerva-Imbergamo murders. This is not someone who wanted to resolve the war through talking. This was someone who was actively engaged. So, big, big picture extrapolating from those detailed aspects of the evidence, you are saying that the evidence of Mr Russo's overall participation in the conspiracy to murder members of the Arena faction is a critical part of the context of the Minerva murder and how we assess Sparaco's... ...that Anthony Russo didn't want to participate in this particular event. That's correct. It absolutely is critical in evaluating the credibility of what Sparaco now says 20-some-odd years later. In addition, there was... Isn't it also clear that, from the record, that Sparaco... There had to have been meetings that Sparaco was not present at? Absolutely. And that the murder planning did not start on March 25, 1992. There was evidence that there was a prior attempt, approximately two weeks earlier, on John Minerva, and that that prior attempt happened in the very vicinity of the location where he was ultimately killed. The clear inference of that testimony is that they were... They, I'm referring to the Persico faction, and specifically Anthony and Joseph Russo's crew, were out there looking for John Minerva. There was testimony that they were targeting John Minerva and that, in fact, there was a witness at the trial who testified that Joseph Russo, in the presence of Anthony Russo, said that they were targeting John Minerva, as well as others, and there's nothing in the record to suggest that Anthony Russo disagreed with that assessment. And so the evidence is that the plan to kill John Minerva was weeks in planning, and the notion that there would be a single meeting just defies logic here. At a minimum, Frank Sparacco's testimony, in this supplemental affidavit that he submits in 2015, is that there was a meeting on the day of the murder, March 25, 1992, at which Frank Sparacco was there, Joseph Russo was there, and then he says, the two other people that are listed in the report on the same date. And if you go back and look at that report, which...so he uses very cryptic language, but if you go back and look at that report, that's Tommy Gioli and Joseph Montalioni. Well, in fact, the evidence shows that there were numerous other participants in the murder conspiracy. There were the two shooters, Robert Ventriglia and Anthony Calandra. There was Eric Curcio, who brought Robert Ventriglia and Anthony Calandra to the scene. There was testimony from an eyewitness at a bar who testified and identified Joseph Montalioni, or Joe Monti, at the scene, or very close to the scene of the crime. He testified that there were four individuals who were there. At the Gioli trial, the government argued that two of those individuals were Joe Monti and Thomas Gioli, and then there was two younger men. Well, one of those younger men may well have been Eric Curcio, but then there was a fourth younger man as well. So all of those people, Eric Curcio, the fourth younger man, the two shooters, all had to be recruited at some point, driven to the murder scene, told where to go. They had to identify where it was that they were going to kill him. All of them had to take place. That didn't happen at that one single meeting. The evidence clearly shows that there were numerous... ..that the planning to kill Minerva was long in action and absolutely consisted of more than a single meeting. And Sporacco... I mean, Sporacco thought it was his job to do the killing, did he? And then he showed up and he saw these other two guys fire into the car? Absolutely. And the notion that Frank Sporacco and Dino Calabro were, quote, ''intimately involved in the planning of the murder'' also doesn't make any sense, because they show up. Maybe they're going to do the killing that day, according to Sporacco's information. According to Calabro, he, you know, was prepared to do what he needs to do during the murder. In fact, he testified that on a prior occasion with Gioli, he went out there looking for John Minerva. So he was there to do what he was going to do, but they show up and, lo and behold, John Minerva and Michael Ambrugamo have already been shot. So they were not involved in every aspect of that planning. And as one of Your Honours pointed out, during Ms Resnick's presentation, Anthony Russo and Joseph Russo were always together. The testimony at the trial was overwhelming about all of the meetings and all of the different occasions during the war, when Anthony Russo and Joseph Russo were together. So, of course, there was an opportunity for them to plan the murder, and the evidence bears out that they did. If Your Honours have no further questions, we'll rely on our brief. Thank you. Ms Resnick, you've reserved three minutes. And I'm glad I did, because I have a lot to say. The very best evidence that there was one meeting to plan this murder is what Frank Spirocco told the government at the proffer sessions in 2010 that we didn't have evidence of and that the panel of this court had no evidence of. The government acknowledges that Frank Spirocco said Anthony Russo wasn't at the meeting. What meeting is he talking about? He's there to proffer, to be a witness at the Gioli trial. He didn't even want to be a witness at the Gioli trial. The government needed him. The government knew all about his credibility issues, and the government knew that he consistently said that Joe Giarrusso was the one who ordered that murder. You know from the statement that Calabro made in his proffer report that, in fact, when he got into Spirocco's car, Spirocco told him, we're supposed to go out there. The meeting that morning was with Montilioni and Gioli. That's where Frank... You seem to have a very narrow conception of what a conspiracy involves. As if... Even assuming that there was only one meeting, which I'm not meeting... To plan that particular day's activities, which seems inconsistent with the fact that Spirocco... Spirocco's participation... Spirocco didn't even know how the murder was going to go down after that meeting, or how it actually went down. But put that aside, why is it not the case that if Anthony Russo had approved efforts to kill Minerva in the past, that he has to be involved in the plan to execute this particular version of killing Minerva? That's the fundamental distinction between a conspiracy and aiding and abetting a murder. That's what Judge Cabran has found to be the most compelling evidence of Anthony Russo's guilt, is that he accepted congratulations at Maz... Of course he did. If he had already approved the killing of Minerva, and then on this particular... Even if he wasn't involved in the planning of this particular expedition that was successful, why does that exonerate him if he had already participated in the vote, if that's what it is, to go after Minerva? Because I suggest to Your Honor that that is consistent with the conspiracy proof, and this was a particular plan to kill Minerva. This was the plan that formulated on March 25th with the notion of killing him at the cafe and with JoJo Russo instructing Spirocco to do it. All the people involved in the murder were JoJo's people. That was the evidence at the Gioli trial. Montelioni... Oh, excuse me, JoJo Russo's crew. Montelioni and Gioli were JoJo Russo's people. The inference you can no longer sustain that Anthony Russo and JoJo Russo did everything together. That was the conspiracy proof. That was the inference that was sufficient at the trial in 1994, but that inference is no longer sufficient. It was JoJo Russo's people, and the evidence of the meeting that morning was what we learned about in the district court based on the government's acknowledgment that Frank Spirocco said that there was a meeting and Anthony Russo wasn't at it. We know that only from that evidence before the district court. That's compelling proof that was not in front of this court. It's corroborated by Calabro's proffer at page 400 that Spirocco said we're supposed to go out there. Those were the four people there that morning. Anthony Russo had nothing to do with those people. That was an inference that was sufficient in 1994, but it's not sufficient now, not in the claim of actual innocence, not on this record. He's done his time for the conspiracy. He should not spend the rest of his life in jail for a murder he did not commit. There are no further questions. Thank you. Thank you very much, Ms. Resnick. Very well argued on both sides, and we appreciate it.